## Appeal of Ramsey et al.

1. In church organizations those who adhere and submit to the regular order of the church, local and general, are the true congregation, and are entitled to the custody of a trust fund created for the benefit of the church organization.

2. Where the majority of a particular church form a union with another body, holding substantially the same doctrines, the congregation adhering thereto do not forfeit their right to the church property in favor of a dissenting minority.

3. McGinnis *v.* Watson, 5 Wright 9, followed.

November 8th 1878.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ.    WOODWARD, J., absent.

Appeal from the Orphans' Court of *Allegheny county :* Of October and November Term 1877, No. 239.

Appeal of S. Ramsey and others, from the decree of the court, dismissing the exceptions to the account of Samuel George, executor under the will of Daniel Speers, deceased.

Daniel Speers died, leaving a will, made in 1841, the sixth paragraph of which provided as follows :

"I will and require that my real estate be supported in good order and condition for the term of fifty years, and shall be kept insured and if destroyed to be rebuilt, and the balance and residue of my estate, real, personal or mixed, after provision being made for the payment of the bequests and expenses before named, I will and bequeath to the Rev. Synod of the Secession Church, of which body the Rev. Dr. Robert Bruce is a member, and the proceeds and avails thereof to be applied to the spreading of the gospel of Jesus

Christ here and elsewhere, and for the support of pious young men who may need assistance while preparing for the gospel ministry, in such ways as said synod may consider will best advance the kingdom of Christ, and at the end of the said fifty years, the executor then acting under this will shall sell and dispose of my real estate, and the proceeds shall be appropriated to the above purposes for the objects before named, in said way and manner as the said synod at a regular meeting thereof (or a General Assembly, if such should then exist, embracing said synod), shall direct."

The name of the synod of which Rev. Dr. Robert Bruce was then a member, was the "Synod of the Associate Presbyterian Church of North America." The highest court judicature of that church was a synod. It had no court known as a General Assembly.

It appeared that the Seceder or Secession Church was also interchangeably called the Associate Church and the Associate Presbyterian Church.

That in 1782 a number of the membership of this church in this country withdrew and entered into a union with some of the Reformed Presbyterians in the United States, which were a part of another fraction of the said Established Church, which, during the revolution of 1688, would not act therewith, and were commonly known as Covenanters, and afterwards, in 1743, as Reformed Presbyterians, under the name of the Associate Reformed Church, with which those who continued to adhere to the Associate or Seceder Church never held communion.

At the time the will was made, and for many years prior thereto, even as early as 1822, a project of union had been discussed and contemplated between that church and the Associate Reformed Church, and at different times between 1840 and 1856, there were actual proposals for a union made between the two bodies from time to time.

In 1856 a Basis of Union was prepared and approved by the Synod of the Associate Presbyterian Church, and by their resolution the same was transmitted to the Associate Reformed Church. Under the same resolution, the Basis was sent down in overture to the Presbyteries of the Associate Presbyterian Church. These presbyteries reported to the synod at its session in 1857. The matter laid over to the session of the synod of 1858, when the final vote being counted, it appeared that of twenty-one presbyteries, twenty voted in favor of the Basis, and but one against it. Up to this period there had not been any written objection or protest filed against the Basis or proposed union.

After the consummation of the union of these two bodies under the name of the "United Presbyterian Church," &c., which took place May 26th 1858, the Associate Presbyterian Synod continued

[*Ramsey's Appeal.*]

its meetings, and on the 27th of May 1858, a protest was filed, which was signed by seven ministers and two elders.

In 1853 the synod of the Associate Presbyterian Church was incorporated under an act of the legislature of Pennsylvania, by the title of the "Trustees of the Synod of the Associate Presbyterian Church of North America;" the synod having authority therein to designate the trustees in the manner pointed out by said act. The act was accepted by the synod and has been complied with continuously ever since its enactment to the present time; the synod also holding its meetings, since the union, annually.

Samuel George, the accountant, and one of the executors under the said will, paid the bequest to the treasurer of said synod up to the time of the creation of the said corporation, and from that time to the treasurer of the corporation under direction of the synod until the time of entering proceedings in this case.

On the 6th of October 1858, a meeting of eight ministers and seven elders was held at Canonsburg, Pa., in pursuance of a call published in a Cincinnati paper, who organized an "Associate Synod of North America." It was not called in the manner provided by the Rules of the Associate Presbyterian Church of North America, and at that or a subsequent meeting they elected persons as trustees of their said corporation. These trustees so elected by the Associate Synod of North America claimed that the payment by the accountant of the bequest should have been made to them, instead of to the Trustees of the Associate Presbyterian Church of North America, which had gone into the union and now formed a part of the United Presbyterian Church.

The executor had filed an account March 25th 1859, which was confirmed absolutely June 1859; also an account confirmed 'absolutely in June 1869, to neither of which exception was ever taken or bill of review had thereon. An account was also filed January 24th 1877, to which exceptions were filed March 14th 1877, by persons who claimed to be the trustees of said Associate Presbyterian Church of North America which originated at Canonsburg, and hence this suit.

June 27th 1877, the Orphans' Court (Hawkins, P. J.), filed a written opinion, and made a decree dismissing the exceptions, as follows :—

"The question involved in this case is the right to the custody of the trust estate created by the will of Daniel Speers, deceased, and the solution of that question turns on the validity and effect of the union of the Associate with the Associate Reformed Presbyterian Church of North America. That that union was valid and effectual to carry with it and preserve rights of property which had previously belonged to those churches, was decided by the Supreme Court of Pennsylvania, in McGinnis et al. *v.* Watson et al., 5 Wright 9, and by the Supreme ·Court of Iowa, in McBride *v.*

[Ramsey's Appeal.]

Porter, 17 Iowa 203. The substantial identity of the United Presbyterian Church of North America with, or its legitimate succession to, the Associate Presbyterian Church of North America, so far as rights of property are concerned, may therefore be taken for granted. If identity of ownership in church property be admitted, identity in trust relations necessarily follows.

"The exceptions to the account of Samuel George, executor of the will of Daniel Speers, deceased, must therefore be dismissed, and the balance in the hands of said accountant be paid to the trustees under the control of the United Presbyterian Church of North America, for the purpose declared in the will of said Daniel Speers, deceased."

The court then made the following decree: "And now, to wit, June 27th 1877, this matter came on for hearing and distribution, at this term, upon exceptions thereto and testimony taken, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed that the exceptions to this account be dismissed, and that the balance in the hands of accountant, viz.: $15,533.41, be paid to the 'trustees of the Synod of the Associate Presbyterian Church of North America,' subject to the control of the United Presbyterian Church of North America, for the purpose of the trust created by the will of Daniel Speers, deceased."

From this decree this appeal was taken.

*Wier & Gibson* and *S. A. Johnston*, for appellant.—The meeting held at Canonsburg was the true synod of the Associate Presbyterian Church. The majority who entered the union had abandoned the faith, doctrines and standards of the church.

*Bruce & Negley*, and *George Shiras, Jr.*, for appellees.—The union was valid, it having been adopted regularly in accordance with the laws governing the church. The law is that in church organizations, those who adhere and submit to the regular orders of the church, both local and general, are the true congregation: McGinnis *v.* Watson, 5 Wright 9.

The judgment of the Supreme Court was entered November 18th 1878,

PER CURIAM.—This case appears to fall within the decision in the case of McGinnis *v.* Watson, 5 Wright 9. That case is not well reported, but the opinion of the court seems to cover this case.

Decree affirmed, with costs to be paid by the appellants, and the appeal is dismissed.