# Manor Real Estate and Trust Company, Appellant, *v.* Cooner.

*Taxation—Tax assessment—County commissioners—Board of revision—Oath.*

A failure of county commissioners to be sworn as a board of revision does not invalidate a tax assessment made by them when acting as such a board.

*Taxation—Tax assessment—Transcript—Act of April 15, 1834, P. L. 509—Costs.*

A tax assessment is not invalid because the county commissioners acting as a board of revision send to the assessor the original instead of a transcript of the triennial assessment as required by sec. 11 of the Act of April 15, 1834, P. L. 509.

Where a bill in equity is filed to declare invalid a tax assessment because of irregularities of the county commissioners, and it appears that the county commissioners were guilty of irregularities, but not of such a character as to invalidate the assessment, the court in dismissing the bill may properly impose the costs upon the county.

Argued May 23, 1904. Appeal, No. 263, Jan. T., 1903, by

plaintiff, from decree of C. P. Northumberland Co., No. 242, in equity dismissing bill in equity in case of Manor Real Estate & Trust Company v. A. H. Cooner et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity to restrain the collection of a tax.

AUTEN, J., filed the following opinion:

The prayer of the bill is that the county commissioners and the various officers of Coal township be enjoined from proceeding to collect certain alleged illegal taxes levied and assessed upon the Luke Fidler tract of land; that an assessment on said tract, alleged to have been made by the assessor elected in 1901, after the triennial assessment of 1900 had been completed, assessing said tract at an increased valuation, be declared illegal and void, and that plaintiff be granted such further and other relief as to the court shall seem meet.

From the pleadings and testimony we find the following as the material facts:

1. The Manor Real Estate and Trust Company is a corporation duly incorporated under the laws of the state of Pennsylvania, and is the owner of a certain tract of land situate in Coal township, Pennsylvania, containing 574 acres and known as the Luke Fidler tract, and was the owner thereof in 1900 and 1901.

2. That James Lynch was elected assessor of Coal township in February, 1898, for the term of three years and made the triennial assessment of lands in said township for the year 1900, and assessed the Luke Fidler tract with a valuation of $25 795, and returned his said triennial assessment to the office of the said county commissioners on or before December 31, 1900.

3. That James Madden was elected assessor of the township of Coal in February, 1901, for the term of three years, and made the annual assessment for said township for the year 1901.

4. That A. H. Cooner, W. H. Rohrbach and G. W. Raudenbush were duly elected county commissioners of the county of Northumberland, were duly qualified and acting as such for the years 1900 and 1901.

5. That the county commissioners of the county of Northum-

berland did not organize themselves into a board of revision for the purposes of adjusting the valuations in the said county, as returned by the triennial assessors, as provided by act of assembly; but that they acted as such board of revision without organizing in the manner prescribed by law.

6. That the county commissioners did not furnish a transcript of the triennial assessment of 1900, made by James Lynch, triennial assessor, to James Madden, assessor for 1901, but in lieu thereof furnished him the original.

7. That the said county commissioners, sitting as a board of revision, but without having first organized and taken the oath of office as such as prescribed by the act of assembly, did revise, adjust and equalize the valuation of property throughout the county of Northumberland and while so sitting did, on May 17, 1901, at the council chambers in the borough of Shamokin, Pennsylvania, raise the valuation placed upon the Luke Fidler tract in Coal township by the triennial assessor of 1900 from $25,795, to $62,620, and that such raise in the valuation of said tract was entered upon the triennial assessment book of 1900 for Coal township by the said board of revision. That on said last mentioned date the plaintiff was requested to appear at the courthouse in the borough of Sunbury, on May 20, 1901, the day fixed for hearing the appeal for corporations, on which last mentioned day, at the place appointed, plaintiff was represented at the appeal, and subsequently, to wit: on July 24, 1901, at the request of the plaintiff, the county commissioners acting as a board of revision as aforesaid, together with the assessor of Coal township, met the representatives of the plaintiff at its office in the borough of Shamokin, Pennsylvania, when the county commissioners, acting as a board of revision as aforesaid, reduced the valuation of the said Luke Fidler tract of land from $62,620, to $57,400; and that after said last mentioned date said commissioners, acting as such or as a board of revision aforesaid, made no other or further changes in said valuation or assessment. That on May 18, 1901, Samuel Clayberger, clerk to the assessor of Coal township, delivered to Squire Helm, a clerk in plaintiff's office, a notice in writing, fixing the date and place for the appeal and continuing the valuation of the Luke Fidler tract as raised by the county commissioners on May 17.

8. The plaintiff paid taxes on the said Luke Fidler tract of land on the valuation of $25,795, for the year 1901, but has not paid taxes on the remainder of the valuation of $57,400, for the year of 1901, on said tract, to wit: the sum of $31,605.

Our conclusions of law are as follows:

1. That the assessment made by the triennial assessor, and returned to the office of the commissioners of Northumberland county, fixed the valuation of the Luke Fidler tract for the years 1901, 1902 and 1903, unless changed by the commissioners of the said county, acting as a board of revision, or on appeal, or reassessed by the annual assessor, because of improvments erected thereon after the triennial assessment was made, and unless such improvements were made upon the said tract the annual assessor had no jurisdiction in 1901, or at any time thereafter to increase the valuation made by the last triennial assessor, and such increased assessment would be void.

2. That the county commissioners of Northumberland county had no right to increase or lower, or in any way, change the triennial assessment made by James Lynch, the triennial assessor in the fall of 1900, unless acting as a board of revision, and then only on notice to the plaintiff.

3. That it was the duty of the triennial assessor in the fall of the year of 1900 to make and return a just and perfect list, in such form as the county commissioners directed, of all property taxable by law, with a just valuation of the same, and return the same into the office of the commissioners of Northumberland county, on or before December 31, 1900. And it was the duty of the county commissioners to cause a written transcript of this to be made out and transmitted to the annual assessor for said township before the second Monday of April following.

4. That the annual assessor in 1901 had no jurisdiction or authority of law to reassess any of the property so valued and returned by the triennial assessor, except in cases where the valuation thereof had been increased by improvements made thereon, after the triennial assessment, or where buildings have been destroyed since the said assessment.

5. That the county commissioners having been duly qualified and having acted as a board of revision, and revised and equalized the assessments throughout the county, they were de facto

officers, their acts cannot be questioned and the plaintiff cannot complain in this action for any increase made by them in the valuation of the Luke Fidler tract.

6. That the failure of the county commissioners to be sworn as a board of revision did not invalidate the said assessment, they were de facto officers and having acted as a board of revision the validity of their acts cannot be questioned in this proceeding.

7. Where the general power to assess exists the remedy for illegal taxation is by appeal; if no appeal be taken the court will not reverse the judgment of the tax officers.

8. That the county commissioners acting as a board of revision had the power and authority to raise the valuation of the said Luke Fidler tract of land in Coal township, and the regularity of their methods in so doing cannot here be called into question, as the plaintiff had a full and adequate remedy at law.

9. That if the plaintiff was aggrieved by the increase of the valuation on the said Luke Fidler tract it had an adequate remedy in law by appeal to the court of common pleas, and if aggrieved by the rate of assessment of taxes levied on said tract it had an adequate remedy in law by appeal to the next court of quarter sessions and this court had no jurisdiction to entertain this bill or to award an injunction restraining the collection of taxes.

10. The plaintiff in this case has shown no such facts as entitle it to relief in a court of equity.

11. The plaintiff in this case has an adequate remedy at law and this court has no jurisdiction to entertain this bill.

As we view this case, the principal point for determination is whether the proceedings relative to the assessment of the Luke Fidler tract and the fixing the valuation thereon at the sum of $57,400 was illegal and void or merely irregular. If void, the injunction should be granted as prayed for, if irregular only, the injunction should be refused. That there were irregularities is abundantly proven by the testimony. The law provides that the county commissioners shall, when the proportions of the several wards, townships and districts shall be ascertained, cause accurate transcripts of the assessments to be made out by their clerk, and shall transmit the same to the

respective assessors on or before the second Monday of April following, together with the statement of the rate per cent and the day of appeal fixed by them. In the present case instead of furnishing the transcript required, the county commissioners furnished to the annual assessor the original assessment made out and returned by the triennial assessor. The Act of July 27, 1842, P. L. 441, provides that the county commissioners shall compose a board to be called a "board of revision," and they shall take and subscribe the oath or affirmation therein prescribed. The testimony clearly shows that the oath required by this act was not taken. Thus, at least two specific provisions of the law were totally neglected by the commissioners. They testify, however, that while they did not take the oath required by the act of assembly, they did revise, correct and equalize the valuation of the taxable property of the county, and that they then supposed they were proceeding legally and regularly. The mere fact that they neglected to send a transcript to the annual assessor is not, in our judgment, important. This neglect may have been for want of time to have it prepared or from motives of economy, besides no one is injured thereby. As to the oath required to be taken by them as members of the board of revision, it will be noticed the act of 1842 declares that "the county commissioners shall compose a board to be called a board of revision." "Compose" means to put together, to make up, to constitute. It was therefore unnecessary that the county commissioners should organize or resolve themselves into a board of revision; the act of assembly, by its very terms, constitutes them such board. As such board, it is their duty to take and subscribe the oath provided. It was their duty to make their revisions and to hear appeals, not as commissioners, but as a board of revision. The testimony discloses that as they revised the valuation of the Luke Fidler tract, they in the same manner revised and equalized the taxable property of the county. In so doing they were de facto a board of revision, just as is a township officer or any other county officer, who performs official acts before taking his oath of office. The proceedings, therefore, while irregular were not illegal and void.

The legislature has provided a complete system of taxation, and has also furnished to any taxable who may feel aggrieved

by the action of the taxing powers an ample remedy by appeal to the courts. The plaintiff, instead of pursuing the remedy provided by the act of assembly, has invoked the equity side of the court to grant relief from the wrongs, either real or fancied, it complains of. It cannot secure by injunction what it might have accomplished by adopting the course afforded by statute.

The injunction is therefore refused and the bill is dismissed.

In view, however, of the many irregularities which evidently invited this litigation and for which the county is largely responsible, we think the county should pay a portion of the costs. It is therefore directed that the county of Northumberland pay the record costs and the defendants' witness bill and that the plaintiff pay its own witness fees.

*Error assigned* was the decree of the court dismissing the bill.

*S. P. Wolverton*, with him *J. C. Bucher*, for appellant, cited: Delaware & Hudson Canal Co. v. Walsh, 2 Phila. Rep. 587.

*Fred B. Moser* and *William W. Ryon*, with them *Charles C. Lark* and *John I. Welsh*, for appellees, cited: M'Gargell v. Hazelton Coal Co., 4 W. & S. 424; Gregg Twp. v. Jamison, 55 Pa. 468; King v. Phila. County, 154 Pa. 160; Riddle v. Bedford County, 7 S. & R. 386; Kingsbury v. Ledyard, 2 W. & S. 37; Com. ex rel. Bowman v. Slifer, 25 Pa. 23; Brunott v. M'Kee, 6 W. & S. 513; Campbell v. Com., 96 Pa. 344; Neale v. Overseers, 5 Watts, 538; York Co. v. Small, 1 W. & S. 315; Com. v. Clemmer, 190 Pa. 202; Com. v. Valsalka, 181 Pa. 17: Clark v. Commonwealth, 29 Pa. 129; Commonwealth v. Burrell, 7 Pa. 34; Commonwealth ex rel. McLaughlin v. Cluley, 56 Pa. 270; Commonwealth v. McCarter, 98 Pa. 607; Coyle v. Commonwealth, 104 Pa. 117; Truesdell's Appeal, 58 Pa. 148, 151; Hughes v. Kline, 30 Pa. 227; Banger's Appeal, 109 Pa. 79.

OPINION BY MR. JUSTICE MESTREZAT, June 15, 1904:

The clear and full opinion of the learned trial judge relieves

us from an extended discussion of the questions involved in this case. As disclosed by his opinion, he does not disagree with the learned counsel for the plaintiff, the appellant, as to the duties of the taxing officers under the legislation of the state. The disagreement arises principally as to the facts deducible from the testimony presented on the trial of the cause. The court below found that the plaintiff's property was duly assessed and returned to the commissioners in the fall of 1900—the triennial year; that the original assessment was transmitted to the assessor by the commissioners of Northumberland county, who fixed May 17, 1901 as the date, and the council chambers of the borough of Shamokin as the place, for hearing appeals; that on this day, the commissioners sitting as a board of revision, without having organized and taken the oath required by the act of assembly revised, adjusted and equalized the valuation of the plaintiff's property, and raised the valuation of $25,795, placed upon it by the triennial assessor in 1900, to $62,620, which latter valuation was entered on the triennial assessment book of 1900 of the township by the board of revision; that on request, the plaintiff appeared before the board at the court-house in the borough of Sunbury, May 20, 1901, the day fixed for hearing appeals of corporations, and subsequently, on July 24, 1901, at the request of the plaintiff, the board of revision and the township assessor met the plaintiff company's representative at its office in Shamokin when the board reduced the valuation from $62,620 to $57,400. After a careful examination and consideration of all the testimony, we are satisfied that these conclusions of fact are warranted by the evidence in the case.

The plaintiff contends that the increase in the assessment was made by the annual assessor for 1901, and not by the county commissioners sitting as a board of revision on the triennial assessment of 1900. We have carefully read the testimony in the case with special reference to this question and fully concur with the finding of the trial judge that the board of revision, and not the annual assessor, increased the valuation of the plaintiff's property. There is no testimony to support the plaintiff's contention except that of three of its witnesses who say that Madden, the assessor elected in February, 1901, told them that he revised and increased the assessment. He satisfactorily

explained his conversation with these gentlemen when on the witness stand, and testified positively that he did not make the change in the assessments, but that it was made by his clerk who was then acting as the clerk of the county commissioners, who instructed him to increase the assessment. Mr. Madden's clerk, Clayberger, testifies to the same effect. The three county commissioners corroborate this testimony and swear that they, sitting as a board of revision, revised and increased the triennial assessment of the plaintiff's property made in 1900, to $62,620, and subsequently, at the request of the plaintiff, reduced it to $57,400. The testimony fully supports the finding of the trial judge.

We agree with the court's conclusion of law "that the failure of the county commissioners to be sworn as a board of revision did not invalidate the said assessment, they were de facto officers, and having acted as a board of revision the validity of their acts cannot be questioned in this proceeding." The act of assembly provides that "the county commissioners . . . . shall compose a board to be called 'a board of revision.'" The testimony conclusively shows that in revising and increasing the valuation of the plaintiff's property, the commissioners were acting as a board of revision. The plaintiff corporation recognized their official position as a board by appearing before them and making application for the reduction of its assessment. It must be assumed that the corporation knew that they had no authority as county commissioners to reduce the valuation or take any action looking to that end. On two occasions, however, the plaintiff demanded a revision of its assessment by the three commissioners who were sitting for the purpose, and now complains that it was not given another hearing by the same officials to enable it to have its valuation reduced. The fact that the commissioners failed to take the oath prescribed by the act cannot avail the plaintiff in this proceeding. They were a de facto board of revision, and having colorable title to the office by virtue of being the commissioners of the county they were a board of revision de jure so far as the right of the plaintiff to attack their authority as such in this proceeding is involved.

It is also objected that the assessment was irregular because the commissioners sent to the assessor the original instead of a

transcript of the triennial assessment as required by the eleventh section of the Act of April 15, 1834, P. L. 509. This objection is purely technical and has no merit whatever. The original assessment served the same purpose as a correct transcript and gave the same information to interested parties. While there might have been errors in the transcript, there could have been none in the original assessment. The plaintiff not being injured by the failure of the commissioners to comply literally with the statute in this respect has therefore no just ground of complaint.

We are of opinion that the legislation relative to the assessment of taxes against real estate was substantially complied with in this case, and while the proceedings were in some respects irregular, they were not illegal or void. If aggrieved by the valuation placed on its property, the plaintiff had a complete and adequate remedy by appeal to the court of common pleas under the Act of April 19, 1889, P. L. 37, and if in its judgment that court erred against it, there was an opportunity given it to correct the error by an appeal to one of the appellate courts of the state under the recent Act of June 26, 1901, P. L. 601.

We do not approve of the loose manner in which the commissioners of Northumberland county performed their duties in the assessment of this property. While the irregularities are not fatal to the proceeding, yet they were doubtless the cause of this litigation, and the learned trial judge was right in expressing his disapproval of the conduct of the county commissioners by not placing the costs on the plaintiff. He might, with propriety, have placed them upon the commissioners. The statutes regulating the assessment of taxes are plain and their requirements easily understood and in this instance the failure to observe them manifestly arose from inadvertence or carelessness by the taxing officers.

The judgment is affirmed.