ARTHUR H. JONES, PLAINTIFF-RESPONDENT, v. HACKEN-
SACK AUTO WRECKERS, INC., DEFENDANT-APPEL-
LANT.

Argued January 16, 1940—Decided March 12, 1940.

Before Brogan, Chief Justice, and Justices Donges and
Porter.

For the appellant, *Herman Greenstone* and *James A.
Major*.

For the respondent, *George I. Marcus* and *John E. Selser*.

The opinion of the court was delivered by

Donges, J.   Plaintiff sues to recover damages for the fail-
ure of defendant to deliver 250 tons of scrap iron, which

plaintiff alleges he purchased from the successful bidder at an auction sale. Plaintiff had judgment in the Bergen County Circuit Court in the sum of $1,093.83 and costs of suit.

Defendant was engaged in the business of dealing in scrap iron and second-hand automobiles and parts. It entered into a contract with one Bauridel, a public auctioneer, to conduct a sale of certain goods and chattels, including a pile of scrap iron.

Plaintiff introduced testimony at the trial that Bauridel was engaged to auction off the articles above mentioned; that the auctioneer sent out circulars advertising a sale "at absolute auction without limit or reserve;" that approximately thirty dealers in scrap iron attended the sale; that Bauridel, before receiving bids, was asked how much iron was in the pile of scrap and Finocchiaro, president of defendant corporation, told him there were approximately 250 tons, which Bauridel announced to the bidders; that there were 250 tons of scrap iron; that three bids were received and the auctioneer struck off the property to one Abramson; that Abramson assigned his bid to plaintiff after making a deposit of $50 with the auctioneer; that demand was made for the iron and that the demand was refused.

The defendant asserts that the proofs in its behalf show that the iron had been withdrawn from sale before the acceptance of Abramson's bid; that there was no representation of quantity and that the situation at the sale indicated an arrangement to stifle bidding. Defendant now urges that, under plaintiff's proofs, there was a case to go to the jury, and that the trial judge committed error in withdrawing the case from the jury and in directing a verdict for the plaintiff.

The first contention is that it was error to direct the verdict because there was a question of fact as to whether or not the iron had been withdrawn from the sale before the sale was consummated. This grows out of the testimony that Finocchiaro rushed up to the auctioneer and shouted "no sale." There is a dispute as to whether he did this after the auctioneer declared the iron sold or before, and the argument is that this raised a question of fact for the jury. We think

there is no merit in the contention. The statute provides (*R. S.* 46:30-27) : "A Sale by auction is complete when the auctioneer announces its completion by the fall of the hammer, or in other customary manner. Until such announcement is made any bidder may retract his bid; and the auctioneer may withdraw the goods from sale unless the auction has been announced to be without reserve." As stated above the circular advertising the sale stated that it would be "at absolute auction without limit or reserve." The right to withdraw the goods from sale, therefore, did not exist at the earliest time Finocchiaro is claimed to have attempted to exercise it. The rule, as stated in 5 *Am. Jur.* 456, is: "If the sale is expressly announced to be 'without reserve,' however, the owner may be held liable for a withdrawal of the property from the sale after a bid. In that case after a bid has been made the auctioneer cannot withdraw."

But the defendant claims the circular was drawn up by the auctioneer and he had no authority to insert this announcement with respect to the character of the sale. Whether or not Bauridel was expressly directed or authorized to insert this condition is immaterial, because Finocchiaro testified that he as president of defendant company sent out some of these circulars to scrap iron dealers before the sale, and defendant, therefore, adopted and ratified the circular as printed and is bound by it.

It is next argued that it was error to direct a verdict because there was a dispute in the evidence as to the quantity of iron in the pile sold. The bidding was not by the ton but by the lot; the quantity being sold consisted of a large pile, described by one witness as being as large as the court house. The bid at which the iron was struck off was $1,000. As stated, the auctioneer announced at the sale that the pile consisted of "approximately 250 tons." The circular referred to included among other items to be sold "250 tons iron." The defendant's president testified there were approximately 115 tons in the pile, but the weight slips which he claimed covered the sale of all this lot of iron, when it was finally sold and delivered to another party subsequent to the auction, add up to 336,375 pounds, or approximately 150 gross tons.

In either case, there is a wide divergence from the advertised 250 tons. Defendant relies upon the use of the word "approximately," claiming there is frequently a variance of ten per cent. in estimating the amount of iron in a pile. However, the rule is "Qualifying clauses such as 'more or less,' 'thereabouts,' and 'estimated to contain,' will cure slight deficiencies and inaccuracies; but they will not protect the vendor against the consequences of intentional misstatements or gross carelessness." 6 C. J. 828.

The direction of a verdict for the plaintiff can be sustained only if, under the circumstances, there existed an obligation on the part of the defendant to deliver 250 tons of iron to the bidder. Two elements are relied upon in this respect by the respondent. First, the announcement in the circular that 250 tons of iron would be sold. The difficulty with this is that there was testimony that there were other piles of iron in the defendant's yard and there was no testimony from which it could be said that it was an undisputed fact that all the iron advertised was in this pile. The other circumstance is the announcement of the auctioneer that there were "approximately 250 tons." The auctioneer testified that he got this information from Finocchiaro in order to answer an inquiry from one of the bidders as to quantity. Finocchiaro flatly denies this and says that he was in conversation with the plaintiff at a point some distance from the auctioneer when the sale started, and was asked no questions by the auctioneer and gave no information to him. Thus a disputed question of fact is presented. Unless authorized by the seller to do so, we fail to see any authority in the auctioneer to make warranties as to quantity that would be binding upon the seller. It is not within his implied authority. Express authority is denied.

We, therefore, are of the opinion that it was error to direct a verdict and think the question of the auctioneer's authority to bind the defendant with his statement as to quantity was a question of fact for the jury.

Defendant raises here for the first time the question of compliance with the statute of frauds. However, we think the acceptance of a deposit and the giving of a memorandum

of the sale in writing by the auctioneer satisfied the statute. It is claimed that the authority of the auctioneer had been withdrawn by the action of Finocchiaro, but as we have held it was too late for him to withdraw the iron from the sale, it was necessarily too late for him to withdraw the auctioneer's authority to do all that was necessary to consummate the sale to the successful bidder.

Two other points are argued concerning the rejection of testimony. In the one instance the question was withdrawn, and in the other the question was entirely immaterial, so we need not discuss them at length.

The judgment is reversed, and a *venire de novo* awarded.