## Narehood *v.* Pearson, Appellant.

Argued April 21, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

Appeal, No. 197,

*Robert V. Maine*, with him *Frank G. Smith, Frank A. Whitsett* and *Joseph J. Lee*, for appellants.

*Carl A. Belin*, for appellees.

OPINION BY MR. JUSTICE BELL, May 25, 1953:

Many taxpayers were naturally surprised and incensed because the total assessments of real property in Clearfield County for 1953 were increased 400% over 1952.

Narehood and a large number of other taxpayers of Clearfield County filed a bill in equity to enjoin the county commissioners and the county board of assessment and revision of taxes "from proceeding on the assessments" which they averred were illegally and unconstitutionally made, or "levying any millage or collecting any taxes thereon." The amended bill of complaint alleged that the values of properties fixed in the 1953 county assessment were not uniform or equal but were arbitrary, discriminatory and unconstitutional. The lower Court overruled and dismissed defendants' preliminary objections; the county commissioners then took this appeal.

The mere averment that an assessment is arbitrary, discriminatory, illegal and unconstitutional, without adequate supporting facts is insufficient. Preliminary objections admit as true all facts which are averred in the bill of complaint but not the pleader's conclusions or averments of law: *Carlin v. Pa. Power & Light Co.*, 363 Pa. 543, 70 A. 2d 349; *Price v. Robbins*, 298 Pa. 568, 148 A. 849; *Pfeil's Estate*, 287 Pa. 21, 134 A. 385.

Plaintiffs averred that the assessments were illegal because the Board (for the assessment and revision of taxes) did not establish a Permanent Records System as required by §306 of the amendatory Act of January 18, 1952, P. L. 2094. Since this Act required the new Permanent Records System to be established within five years from January 18, 1952, this averment or contention of plaintiffs was utterly devoid of merit.

Plaintiffs also alleged that the assessors did not comply with §506 of the Act of January 18, 1952, P. L. 2138, which amended the Act of May 21, 1943, known as The Fourth to Eighth Class County Assessment Law, in that they did not gather and report to the chief assessor all data and information necessary to assess, rate and value all subjects or objects of local taxation, namely, 45,000 parcels of real estate; and that the chief assessor failed to take into consideration the value of such property as indicated by the use of cost charts and land values applied on the basis of zones and districts as well as the general adherence to the established predetermined ratio. It is obvious that the assessors could not, in a few months, gather all the required data and information with respect to 45,000 properties; and similarly, that the required cost charts and land values could not possibly have been obtained in time for the 1953 assessments. If injustice has resulted from any

technical irregularities in the assessments, it can be corrected on appeal.

The taxpayers in this suit have failed to realize the time element involved, and the practical situation and difficulties confronting the assessors and the chief assessor under the amendatory Acts. How could the assessors gather and collect all the data and information required, and the chief assessor personally assess in a few months 45,000 properties under and pursuant to the provisions of the Acts of January 18, 1952? Suffice it to say that so far as was practically possible, due to the limitations of time, the assessors and chief assessor followed the provisions of the new or amendatory Acts of 1952 under which, as will hereinafter more fully appear, each property owner or taxpayer's rights are carefully and adequately protected by a full public hearing on an appeal to the Board, with a further right of appeal to the Court of Common Pleas.

Taxpayers' main averments were that the assessments were based on an unconstitutional "mode" in that an arbitrary figure was fixed, such as $10 an acre for surface land, $10 an acre for mineral land, $20 an acre where a person owned both surface and mineral land, and a specific but unnamed value per acre for farm land; and that this figure per acre would then be multiplied by the number of acres or fractional acres owned. There was no averment or contention that any property was assessed "at more than 75% of its actual value", or that it was not "assessed at a value based upon an established predetermined ratio" as required and restricted by §602 of the Act of January 18, 1952, P. L. 2138, supra.

The taxpayers' contentions on this point are completely answered in *Hammermill Paper Co. v. Erie,* 372 Pa. 85, 92 A. 2d 422. In that case we approved as constitutional (1) a reasonable division or classification of

land based upon different kinds of real property; (2) as well as a different method or formula or yardstick or standard for the valuation and assessment of each separate class of real property; and (3) we likewise held that the assessor did not have to have a personal knowledge of each individual property and the component parts thereof. It is clear, therefore, that the division or classification of land into surface, mineral, and farm land was not arbitrary or discriminatory or illegal, but was unquestionably reasonable, practical and just, and did not violate any provision of the Federal or State Constitution.

But, say the taxpayers, the assessors or chief assessor had no right to fix an arbitrary value of so much per acre for each class of property; what they should have done was to take each 1952 assessment and increase it "by a small percentage".

There was no allegation that $10 an acre for surface land, or $10 an acre for mineral land, or the assessed value of each acre of farm land, was unreasonable and confiscatory or more than 75% of the actual or market value of each property in that class. Merely because a taxpayer can suggest a formula or method or yardstick which appeals to him as one that should be adopted, does not prohibit a tax-assessing body from adopting any formula or yardstick or method it desires, provided it is valid and constitutional. Moreover, it is quite evident that if the 1952 assessment of *each* property had been increased, not by a small percentage, but by 400%, the resentment and protests of the taxpayers would be just as great as is now expressed, and similar charges would be made of discrimination and lack of uniformity.

The last and perhaps most important contention of plaintiffs was that the assessors or chief assessor acted arbitrarily, discriminatorily, unjustly and unconstitutionally in that they failed to value and assess each

individual property at its actual value considering its location, market facilities and other factors which make up market value. Assuming this to be true, should Equity grant injunctive relief?

Just as in a city it is a common practice to adopt, because of practical necessity and the Constitutional requirements of uniformity, a certain specific dollar value per front foot or per square foot in a block or area, or per acre of land in that part of the city which is farm land; and thereafter changes are made by the assessor or by the Board of Revision of Taxes or by the Courts for each individual property because of corner influence or for any one of a number of different factors affecting the value of that particular property, and this method or formula or yardstick has been approved by us; so in this case we hold that the fixing by the chief assessor of a reasonable and uniform basic value per acre for surface land, farm land, and mineral land was reasonable and practical, and since any inequalities or discrimination or illegalities could be corrected on appeal, this did not violate the uniformity or any other provision of the Federal or State Constitution.

One other contention deserves consideration. The taxpayers point out that Equity should take jurisdiction in such a case of alleged arbitrary discrimination in order to avoid a multiplicity of suits by thousands of owners or taxpayers whose interest is the same. The main fallacy of this contention is that the premise is fundamentally wrong. If there be discrimination, inequalities or confiscation, the interest of all taxpayers is not identical but separate. Each individual property has a value which may depend upon its location, or market facilities, or transportation facilities, or operational costs, or other special facts; consequently all property owners, even of the same class and in the same district or area, may not have the same identical in-

terests, nor would the same question or questions necessarily be involved in each assessment. Furthermore, each taxpayer has not only a right of public hearing with or without counsel, but a right of review and appeal to the Board, and still further to the Court of Common Pleas. Where a statute gives a property owner or taxpayer notice, a hearing, and a full and adequate remedy, the Constitutional requirement of "due process" is satisfied: *Com. ex rel. Chidsey v. Keystone Mutual Casualty Co.*, 373 Pa. 105, 95 A. 2d 664; *Anderson National Bank v. Luckett*, 321 U.S. 233; *Dohany v. Rogers*, 281 U.S. 362; and the strong arm of Equity should not be interposed except for very compelling reasons. Especially is this so where an injunction would create financial chaos in the County and virtually paralyze or effectively prevent the County government from functioning.

Where there is an adequate remedy at law in this class of case, this Court has repeatedly said that *Equity should intervene only where there is either want of a power to make the assessment or to levy a tax, or the tax is levied without authority of law, or where there is an utter disregard of imperative constitutional requirements: Bradford Township Taxpayers Protective Assn. v. McKean County Board of Assessment & Revision of Taxes*, 370 Pa. 468, 88 A. 2d 782; *Mauch Chunk Township Taxpayers' Assn. v. Kern*, 339 Pa. 257, 14 A. 2d 329; *Susquehanna Collieries Company's Appeal*, 335 Pa. 337, 6 A. 2d 831; *Wynnefield United Presbyterian Church v. Phila.*, 348 Pa. 252, 35 A. 2d 276; *Delaware, Lackawanna & Western R. R. Co. v. Luzerne County Commissioners*, 245 Pa. 515, 91 A. 889; *Banger's Appeal*, 109 Pa. 79; *Gas Co. v. Elk County*, 168 Pa. 401, 31 A. 1077.

It must be realized that the assessment of real property is a practical matter and ofttimes because of the

vast numbers and different kinds, character and location of the properties involved, assessment and taxation are incapable of mathematical accuracy or theoretical or exact scientific approach. To particularize, a chief assessor or even several assessors cannot, in a few months, personally inspect, appraise and assess 45,000 different pieces of property of various classifications. Moreover, and from a practical viewpoint, a chief assessor or assessors have to start with some fixed reasonable basic price for each parcel or each kind of real estate in a district or township or area. It is not unconstitutional to adopt as a base a reasonable and uniform standard of valuation for each property of the same class in a district or proper area, since substantial uniformity in assessments and in the application of tax laws satisfies the Constitution: *Mineral Railroad & Mining Co. v. Northumberland Co. Comm. (No. 1)*, 229 Pa. 436, 78 A. 991; see also: *Hammermill Paper Co. v. Erie*, 372 Pa., supra.

Taxpayers rely upon *Cumberland Coal Co. v. Board of Revision of Tax Assessments in Greene County*, 284 U.S. 23. That case is sound law but does not support taxpayers' position in this case. In the *Cumberland v. Greene County* case the commissioners divided coal lands into "active coal" and "virgin coal" and assessed all virgin coal in the same township at the same valuation regardless of the remoteness or accessibility of the coal to market, or the cost of operation, or the means and cost of transportation, and without regard to the market value of other coal lands within the same township which had a far greater market value due to various factors. The mere fact that the coal on the property in question was valued at less than its market value, was held to be insufficient to satisfy the uniformity and equality required by the Constitution. The Court in its opinion, said (pages 28-29): ". . . *the intentional,*

*systematic undervaluation* by state officials *of taxable property of the same class* belonging to other owners *contravenes the constitutional right of one taxed upon the full value of his property.\*. . . '. . .* where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law.'

"In applying this principle, the fact that a uniform percentage of assigned values is used, cannot be regarded as important if, in assigning the values to which the percentage is applied, a system is deliberately adopted which ignores differences in actual values so that property in the same class as that of the complaining taxpayer is valued at the same figure (according to the unit of valuation, as, for example, an acre) as the property of other owners which has an actual value admittedly higher. Applying the same ratio to the same assigned values, when the actual values differ, creates the same disparity in effect as applying a different ratio to actual values when the latter are the same. . . ."

It is very important to note that that case was an appeal by a taxpayer from a tax assessment and not a class bill in equity.

Not only is an adequate remedy at law provided by the Act of 1952 but there is no question here of the right or power of the commissioners or assessor to make the assessments or to levy the tax, as there was in *Wilson v. Philadelphia School District,* 328 Pa. 225, 195 A. 90, and in *Jamison Coal & Coke Co. v. Unity Township School District,* 362 Pa. 389, 66 A. 2d 759.

In the recent case of *Bradford Township Taxpayers Protective Association v. McKean County Board of Assessment and Revision of Taxes,* 370 Pa. 468, 88 A. 2d

---

\* Italics, ours.

782, where the *Taxpayers Association* made virtually the same allegations as are here averred, viz., that all improvements to real estate other than oil lands were assessed at 150% more than the 1949 assessment; and the value of oil lands and other lands, and of improved or unimproved real estate were assessed at different ratios of assessed value to actual value, and that such method of assessment was discriminatory, lacked uniformity and was a violation of the Constitution and of the pertinent Acts relating to assessments, this Court sustained preliminary objections to plaintiff's Bill in Equity and held that Equity was without jurisdiction. The following excerpts from Mr. Justice CHIDSEY's opinion in that case are equally applicable to the facts in this case: "In Wynnefield United Presbyterian Church v. City of Philadelphia et al., 348 Pa. 252, 35 A. 2d 276, Mr. Justice LINN said, 'A distinction has been taken between the cases in which over-assessment or inadequate exemption has been alleged and the cases in which the property owner denies the power to levy any tax. In the former, it has been held that the remedy is by appeal from the assessment, as the statute provides, and not in equity; in the latter, equity affords the remedy: . . .'. That this is not a case of a denial by a property owner of the *'power to levy any tax'* is apparent. Here the plaintiff contends that the *method of assessment* is unconstitutional and disregards the statutes granting the power to assess. . . .

". . . it is a situation where the members of the plaintiff association complain about an overassessment of their property in comparison with other property in the township, viz., oil lands. If upon appeal by the individuals the court of common pleas of such county finds a lack of uniformity or a violation of the statutes, they will be entitled to appropriate remedial action: See Mineral Railroad & Mining Company v. Northumberland County Commissioners (No. 1), 229 Pa. 436,

78 A. 991. However, the remedy is not, as the lower court correctly concluded, by a bill in equity.

"We can only profitably add what was said in Delaware, Lackawanna & Western R. R. Co. v. Luzerne County Commissioners, 245 Pa. 515, 91 A. 889, 'Equity has power in a proper case to restrain the collection of a tax, but it is a power that should be cautiously exercised, because as a general rule there is an adequate remedy at law. . . . What we do decide is that every question presented for our consideration in the case at bar, can be raised on appeal from the revised assessment under the law. There being an adequate remedy at law, a court of equity should be very slow to extend its restraining arm when by so doing the entire assessment would be stricken down.' "

Similarly, this Court said in *Delaware, Lackawanna & Western R. R. Co. v. Luzerne County Commissioners*, 245 Pa. 515, 517, 91 A. 889: ". . . Equity has power in a proper case to restrain the collection of a tax, but it is a power that should be cautiously exercised, because as a general rule there is an adequate remedy at law. Equity will only intervene in such a case where there is either want of power to tax or a disregard of imperative constitutional requirements: Banger's App., 109 Pa. 79; Gas Company v. Elk County, 168 Pa. 401."

In *Mauch Chunk Township Taxpayers' Assn. v. Kern*, 339 Pa., supra, this Court reversed the order of the lower Court which granted an injunction against the Board of Revision of Taxes, and said (pages 259-260): ". . . In Pittsburgh, A. & M. Ry. Co. v. Stowe Twp., 252 Pa. 149, this Court said (p. 155): 'Where there is a want of power to tax or the tax is levied without authority of law, a bill in equity will lie to restrain its collection. . . . If the tax is lawful but the manner of collecting it is oppressive or unfair, or there are technical irregularities in the assessment, the remedy is at law and by an appeal from the assessment.' This

well established rule was recently reaffirmed by us in Susquehanna Col. Company's Appeal, 335 Pa. 337, where we held (p. 343) : 'The statutory remedy of appeal from the action of the assessors to the Board of Revision is not only adequate, but exclusive, where the assessing authorities have acted within the lawful scope of their powers.' See also Ramsey's Appeal, 88 Pa. 60; Moore v. Taylor, 147 Pa. 481; Manor Real Est. etc. Co. v. Cooner, 209 Pa. 531; Miller v. Northampton County, 307 Pa. 550; Dougherty v. Philadelphia, 314 Pa. 298; Derry Twp. School Dist. v. Barnett C. Co., 332 Pa. 174, 177."

It is clear from these authorities that defendants' preliminary objections should have been sustained and the amended bill of complaint should have been dismissed.

Judgment reversed; costs to be paid by appellees.