## Pillsbury v. McNabb

*Thomas C. Kubelius*, for plaintiff.
*Jules Goldstein*, for defendants.

WIEAND, J., June 21, 1965.—This matter is before the court on preliminary objections in the nature of a

demurrer to plaintiff's complaint in assumpsit. Three reasons are given in support of defendants' contention that the complaint fails to set forth a cause of action. They are: (1) A contract for the sale of real estate did not result merely because plaintiff was the highest bidder at public auction, and defendants, therefore, could withdraw the property from sale at any time and in any manner; (2) since the property for which bids were received was real estate, any contract resulting from plaintiff's oral bid would be unenforceable because of the statute of frauds, and (3) the complaint failed to allege damages for which a recovery could be allowed.

We approach this case in the light of the well-settled principles set forth in Adams v. Speckman, 385 Pa. 308, 309:

". . . 'preliminary objections admit as true all facts which are averred in the bill of complaint but not the pleaders' conclusions or averments of law': Narehood v. Pearson, 374 Pa. 299, 302, 96 A. 2d 895. Moreover, when the sustaining of defendants' preliminary objections will result in a denial of plaintiffs' claim, or a dismissal of plaintiffs' suit, preliminary objections should be sustained only in cases which are clear and free from doubt: London v. Kingsley, 368 Pa. 109, 81 A. 2d 870; Waldman v. Shoemaker, 367 Pa. 587, 80 A. 2d 776."

On February 22, 1964, defendants, acting through their agent thereunto duly authorized in writing, exposed to sale at public auction premises known as 603 Dalton Street, Emmaus, Pa. The sale had been advertised on three separate occasions in a newspaper of general circulation as an "absolute auction". At the time of sale, it was also announced as being an "absolute auction", and the terms of sale were to the effect that the property would be sold to the highest bidder. After considerable bidding in which plaintiff partici-

pated actively, he submitted a bid of $17,500 for the real estate. Thereafter, without any intervening bid having been made, the auctioneer announced that he had a bid of $20,000, and the premises were "knocked down" for that amount. This bid was not bona fide, but was either nonexistent or made by an agent of the auctioneer, or defendants, or both, and the real estate was never conveyed to anyone as a result of the auction. Subsequently, by agreement dated April 22, 1964, defendants sold the premises for $27,000 to persons who had not been present at the auction and on whose behalf no bid had been made. Defendants' refusal to convey to plaintiff, despite his demand therefor, has caused damages to plaintiff, which, without any attempt to itemize or label, he alleges to be in the sum of $9,500.

To dispose of defendants' first objection, it is necessary to define the nature of the sale at which the recited events occurred. It is plaintiffs' theory, and thereon depends his cause of action, that the auction was "without reserve". At such an auction, the owners of the property have no right to withdraw the property after bidding has been commenced: Restatement, Contracts, §27. It is also necessarily implicit in an auction "without reserve" that the owners may not themselves bid in the property, for such would be equivalent to withdrawing it from sale: Zuhak v. Rose, 264 Wis. 286, 58 N. W. 2d 693, 37 A.L.R. 2d 1041; Drew v. John Deere Company of Syracuse, Inc., 241 N. Y. S. 2d 267; Restatement, Contracts, §27, illustration no. 4. The most recent statement of the reason for this rule appears in Drew v. John Deere Company of Syracuse, Inc., supra, where, at page 269, the court said:

"Various legal theories have been advanced for the holding that the announcement that the auction would be 'without reserve' imposes a binding legal obligation upon the owner, but the best view seems to be that the owner, by making such an announcement, enters into

a collateral contract with all persons bidding at the auction that he will not withdraw the property from sale, regardless of how low the highest bid might be (Gower, 'Auction Sales of Goods Without Reserve', 68 Law Quarterly Review 457; Warlow v. Harrison (1859) 1 E. and E. 295, 309). Therefore, the highest bona fide bidder at an auction 'without reserve' may insist that the property be sold to him or that the owner answer to him in damages (Zuhak v. Rose, 264 Wis. 286, 58 N.W. 2d 693; Forbes v. Hunter, 223 Ill. App. 400; Jones v. Hackensack Auto Wreckers, 124 N.J.L. 289, 11 A. 2d 595; 7 Am. Jur. 2d Auctions, §21, p. 240; Annot., 37 A.L.R. 2d 1049, 1056; 1 Corbin on Contracts, §108, p. 341; 2 Williston on Sales, §297, p. 205)."

On the other hand, if the auction was not announced to be "without reserve" and there was no indication that the auctioneer was making an offer to sell at any price bid by the highest bidder, the owners then had the right to withdraw the property at any time before it was "knocked down". There is no contract until the offer made by the bidder is accepted by the auctioneer's "knocking down" the property to him: Fisher v. Seltzer, 23 Pa. 308; Drew v. John Deere Company of Syracuse, Inc., supra; Restatement, Contracts, §27.

In the complaint presently before us, it is alleged that the term "absolute auction" has been accepted by custom as being equivalent to an auction "without reserve". Neither party has called to our attention any cases, and our own research has revealed none, in which the legal effect of the phrase "absolute auction" has been defined, and the question now before us seems to be one of first impression. Although of no effect whatsoever, it is interesting to note that the author of the syllabus for the case of Ellis v. Farber, 17 Somerset 140, used the words "absolute auction" to describe an auction which the court had stated to be "without reserve".

We do not believe that we can or should create an auction "without reserve" where none was intended. On the other hand, we cannot ignore in the announcement of sale the adjective "absolute" as it was used to modify "auction", and, at this stage of the proceedings, we cannot say with the certainty suggested by defendants that their advertisement of an "absolute auction" meant nothing more than that all items enumerated in the ad would be offered for sale. The term "absolute" is generally used in connection with a sale of realty in the sense of unconditional, complete and perfect in itself, but the word has no fixed or unvaried meaning that must prevail in every case, and extrinsic evidence of surrounding circumstances may be received to shed light on the meaning intended. Compare Thompson v. Craft, 238 Pa. 125. Although not applicable to auctions of real estate, we are not unmindful that the provisions of section 2-328 of the Uniform Commercial Code of April 6, 1953, P. L. 3, as amended, 12A PS §2-328, assert that an auction of personalty is with reserve unless the goods are in explicit terms put up without reserve. Whether the phrase "absolute auction" is sufficiently explicit, however, must be determined in the light of the sellers' intent as evidenced by all of the surrounding circumstances. Not the least of these, it would seem, would be the detailed conditions of sale, if any, read to prospective buyers at the time of the sale.

Defendants next argue that plaintiff's alleged cause of action is barred by the statute of frauds * which provides, in effect, that no agreement for the sale of real estate will be enforced unless it is in writing and signed by the party to be charged. That the statute of frauds may be raised by preliminary objections to the complaint has now been established: Prager v. McAdam, 399 Pa. 405; Haskell v. Heathcote, 363 Pa. 184. It has also been held generally that sales by auc-

---

* Act of March 21, 1772, 1 Sm. L. 389, sec. 1, 33 PS §1.

tion are within the provisions of the statute of frauds to the same extent as any other sale or contract of sale relating to land: Polka v. May, 383 Pa. 80; Bush v. Breinig, 113 Pa. 310; Kurtz v. Cummings, 24 Pa. 35; Cisney v. Chilcote, 4 D. & C. 2d 310; Harvey v. Thacher, 28 W. N. C. 134. We know of no case, however, in which the statute of frauds has been raised successfully in defense of an action for damages based upon a wrongful withdrawal of property from sale at an auction which has been advertised and announced to be "without reserve". A contrary result, in fact, has been reached in those few cases which have considered this question.

In Zuhak v. Rose, supra, the Wisconsin Supreme Court held that where, at an auction without reserve, the owner had stopped the auction of real estate and discharged the auctioneer before the latter could receive higher bids or accept the highest bid made, he could not complain that the highest bidder had no memorandum of sale sufficient to comply with the statute of frauds. And, in Jones v. Hackensack Auto Wreckers, Inc., supra, the Supreme Court of New Jersey refused to accept the argument of the owner of scrap iron that because he stopped an auction without reserve, the authority of the auctioneer to give a memorandum of sale to the highest bidder was withdrawn, saying that after the bidding had started ". . . it was . . . too late for him to withdraw the auctioneer's authority to do all that was necessary to consummate the sale to the successful bidder".

Assuming, as we are required to do at this stage of the proceedings, that the allegations of the complaint are true, it is clear that defendants are guilty of sharp dealing, if not fraud. As such, the dictum of Justice Musmanno, speaking for a unanimous court, in Simplex Precast Industries, Inc. v. Biehl, 395 Pa. 105, at pages 108 and 109, becomes pertinent. Referring to the statute of frauds, he wrote:

"The laudable purpose of this guardian of truth is to prevent frauds and perjuries. Occasionally, however, an embattled property owner . . . summons the statute to enforce a condition which does not seem to coincide with principles of honesty and fair dealing. In such cases the courts should study the situation involved to make certain that the statute is not being used to perpetrate fraud and perjuries rather than prevent them."

Plaintiff's cause of action is not based upon an oral contract for the sale of real estate. It is based, instead, upon defendants' violation of his duty, whether imposed by rule of law or by collateral agreement, to permit the auction to be completed by sale to the highest bona fide bidder and to refrain from withdrawing the property before such had been done. If such an action is to be barred by the statute of frauds, the effect of an auction without reserve will be nullified for all practical purposes whenever the property being offered for sale is the subject of a statute of frauds. We do not believe, therefore, that the statute of frauds was intended to bar an action based on facts such as those which have been alleged in this complaint.

The extent of plaintiff's damage, if any, can more properly be assessed at the time of trial. Suffice it to say that plaintiff's allegation of his loss is sufficient to prevent summary judgment against him. If defendants wished to question the degree of particularity with which these damages were alleged, they could have done so by a motion for a more specific pleading.

### Order

And now, June 21, 1965, defendants' preliminary objections in the nature of a demurrer are dismissed, and defendants are directed to file an answer on the merits within 20 days after service of a copy of this order upon their counsel.