Commonwealth ex rel. Alessandroni v. Sacks

*Edward Friedman*, Deputy Attorney General, for Commonwealth.

*George M. Harvey* and *Thomas A. Masterson*, for defendant.

HERMAN, J., October 18, 1965.—We have before us an action in quo warranto in which the Commonwealth of Pennsylvania, on the relation of the Attorney General, seeks to oust Leon Sacks from the office of "member of The Registration Commission in and for the City of Philadelphia".

To the complaint filed by the Commonwealth, preliminary objections and supplemental preliminary objections were filed by defendant, and we are now asked to pass upon these objections.

The objections raise three issues, only two of which

need be considered, since the third has become moot:[1] (1) Does this court have jurisdiction of the matter before us? (2) Does the complaint set forth a cause of action on which relief may be granted?

We believe that this court has jurisdiction. Prior to 1870, by various acts of assembly, the Court of Common Pleas of Dauphin County was clothed with jurisdiction throughout the Commonwealth in matters concerning the fiscal affairs of the State, but then the Act of April 7, 1870, P. L. 57, Sec. 1, as amended, 17 PS §255, provided:

"The court of common pleas of the county of Dauphin and the judges of the orphans' court of Dauphin County are hereby clothed with jurisdiction, throughout the State, for the purpose of hearing and determining *all suits*,[2] *claims and demands whatever, at law and in equity*, in the court of common pleas of said county, in which the Commonwealth may be the party plaintiff for accounts, unpaid balances, unpaid liens, taxes, penalties *and all other causes of action, real, personal and mixed*".

The jurisdiction of this court was thus enlarged, and the title of the Act of 1870 specifically indicated this in the wording: "An Act To enlarge the jurisdiction of the court of common pleas for the county of Dauphin, in cases wherein the Commonwealth may be plaintiff. . . ."

In construing this act in Commonwealth ex rel. Schaffer v. Wilkins, 271 Pa. 523 (1922), an action of mandamus on the relation of the Attorney General against school directors of a township school district in Erie County, the action having been brought in

---

[1] The third objection raised the question of the effect of a prior action in the same matter in Philadelphia. That action was disposed of by our Supreme Court on May 25, 1965; see Philadelphia v. Sacks, 418 Pa. 193 (1965).

[2] Italics ours throughout.

Dauphin County, Mr. Justice Simpson, for a unanimous Supreme Court, said, at page 527:

"[I]ts evident purpose is that the Commonwealth, when suing in her own right, shall be allowed to prosecute her claims at the seat of government, and not be required to go to other parts of the State, where the defendants happen to reside. The fact that, under other legislation, she has also the privilege of proceeding wherever the defendants may be found and served with process, is beside the question; for this does not repeal the Act of 1870, either expressly or by implication, and hence she still has the absolute right to litigate her claims in Dauphin County, if she chooses so to do".

See Commonwealth v. Pennsylvania, Slatington and New England R.R. Co., 2 Dauph. 283 (1883), where it was held that this court has jurisdiction in a quo warranto action against a corporation which had no place of business in Dauphin County and exercised none of its powers and privileges here. See also Commonwealth ex rel. Baldrige v. United States Trust Co., 32 Dauph. 213 (1929), where jurisdiction in quo warranto was assumed in Dauphin County without objection when defendant was apparently a Philadelphia corporation.

By virtue of authority granted to the Supreme Court by the Act of June 21, 1937, P. L. 1982, as amended, 17 PS §61, that court adopted rules of civil procedure, among which is Pennsylvania Rule of Civil Procedure 1112 concerning quo warranto, which provides in part that: "An action brought by the Commonwealth on the relation of the Attorney General may be brought in Dauphin County in all cases. . . ."

Defendant, in questioning jurisdiction, argues that the legislature could not have intended to give to Dauphin County jurisdiction in an action concerning the right to occupy a purely local Philadelphia office, for if it did, it would be depriving a defendant of his consti-

tutional rights. This conclusion is reached by defendant from his dual premise; first, that in the action of quo warranto at common law, a defendant was entitled to a jury trial, and that this right was preserved by sec. 6 of article I of the Pennsylvania Constitution, which provides that: "Trial by jury shall be as heretofore, and the right thereof remain inviolate"; and, secondly, that quo warranto is in the nature of a criminal proceeding, and sec. 9 of article I of the Pennsylvania Constitution provides that in all criminal prosecutions the accused shall have ". . . a speedy public trial by an impartial jury of the vicinage. . . ."

Assuming, for the moment, that his premises are sound, there appears no reason why defendant could not have an impartial jury trial in Dauphin County, and so his argument would then rest solely on the definition of "vicinage". The meaning of "vicinage" is vicinity, or neighborhood, but the extent of boundaries thereof are far from clear. It has been held that it does not mean "county": Commonwealth v. Collins, 268 Pa. 295 (1920). It has likewise been held that: " 'Vicinage', used in our Constitution, is found in few others and is of uncertain meaning, It is not co-terminus with a county and may, in fact, embrace more than one county. . . .": Commonwealth v. Reilly, 324 Pa. 558, 568 (1936). The principal protection for an accused in a criminal proceeding is that he obtain a fair trial by an impartial jury, and where such a trial can not be had in the county where the crime was committed, the Supreme Court may change the venue to another county.[3] But it is nowhere clear in Pennsylvania, or other jurisdictions, that the right of trial by jury is guaranteed in quo warranto proceedings; see 50 C.J.S. Juries §51 (1947); 44 Am. Jur. 171, §111, et seq. (1942); and, further, while it is sometimes said that

---

[3] Id. at 569.

the action of quo warranto "possesses many of the elements of a criminal prosecution", Commonwealth ex rel. Schermer v. Franek, 311 Pa. 341, 344 (1933) ), it is also in that case pointed out that originally it entailed fines and imprisonment, but ". . . the writ soon lost its criminal character and applied to the mere purpose of trying the civil rights involved. . . ." [4] Then, too, earlier cases had held it was civil in nature: Commonwealth ex rel. Tyler v. Small, 26 Pa. 31 (1856) ; Commonwealth v. Burrell, 7 Pa. 34 (1847). And, of course, it must be remembered that the Act of June 14, 1836, P. L. 621, as amended, 12 PS §2021, et seq., relating to writs of quo warranto, does not provide for any right of trial by jury.

So we must conclude that in the light of the specific and definite words in the Act of 1870, conferring jurisdiction on this court in "all . . . causes of action, real, personal and mixed" where the Commonwealth is plaintiff, we can not say that the legislature did not intend us to assume jurisdiction of this type of quo warranto action.

We now turn to the second issue; viz., does the complaint set forth a cause of action on which relief may be granted?

The procedure in quo warranto, as far as material here, shall be in accordance with the rules relating to the action of assumpsit: Pa. R. C. P. 1111. The assumpsit rules provide, inter alia, that in the pleadings: "The material facts on which a cause of action . . . is based shall be stated in a concise and summary form": Pa. R. C. P. 1019 (a). "The function of the pleadings is to put the opponent on notice of what he will be called upon to meet at the trial, and to define the issues which will be tried": Goodrich-Am. §1019-1. It is often difficult to distinguish between a fact, an inference, and a

---

[4] Ibid.

conclusion of law, and many times the pleader is confronted with a mixed question of law and fact. The court should and does have wide discretion in interpreting the averments of a pleading and in determining whether what would normally be a "conclusion of law" may not be considered a material fact in a particular pleading: Goodrich-Am. §1019 (a)-12.

Defendant complains that plaintiff has pleaded conclusions of law and not material facts and that, therefore, his complaint is deficient and asks that it be dismissed. Such a preliminary objection admits for the purpose of arguing the legal sufficiency of a complaint all facts sufficiently pleaded and all inferences fairly deducible therefrom: Bogash v. Elkins, 405 Pa. 437 (1962) ; Goodrich-Am. §1017 (b)-11.

As Mr. Justice Bell, now Chief Justice, said in Adams v. Speckman, 385 Pa. 308, 309 (1956) :

"We approach this case in the light of the well settled principles set forth in Gardner v. Allegheny County, 382 Pa. 88, 94, 114 A. 2d 491: '. . . "preliminary objections admit as true all facts which are averred in the bill of complaint but not the pleaders' conclusions or averments of law": Narehood v. Pearson, 374 Pa. 299, 302, 96 A. 2d 895. Moreover, when the sustaining of defendants' preliminary objections will result in a denial of plaintiffs' claim, or a dismissal of plaintiffs' suit, preliminary objections should be sustained only in cases which are clear and free from doubt: London v. Kingsley, 368 Pa. 109, 81 A. 2d 870; Waldman v. Shoemaker, 367 Pa. 587, 80 A. 2d 776' ".

With these principles in mind, let us look at the complaint and defendant's objection thereto.

It is averred that Donald Rubel was appointed as a member of the registration commission in and for the County of Philadelphia to fill a vacancy created by the expiration of the term of Leon Sacks, and "4. That thereupon the said Donald Rubel became a duly and

lawfully appointed member of the said Registration Commission. . . ." Defendant complains that it is not further averred that Rubel took the oath of office.

It is not required that one plead specifically all conditions precedent to a given act. Here, it will be noted plaintiff pleads that Rubel became "a duly and lawfully appointed member"; that Rubel is "the person rightfully and lawfully entitled to said office"; and in the "Wherefore" clause, that Rubel "was duly appointed and qualified on January 5, 1965". We believe this is sufficient.

Defendant says that the complaint fails to allege that there was a vacancy in the office when Rubel was appointed, but the complaint adequately sets forth that Rubel was appointed "to fill the vacancy created by the said expiration of the term of Leon Sacks". We find no merit in this objection.

Lastly, it is complained that the appointment was not alleged to have been made with the advice and consent of the Senate, and that for this reason the complaint should be dismissed. But, of course, this is the crux of the whole problem, and plaintiff would readily concede that this was not alleged, for it is the Commonwealth's position that such advice and consent is not required when, as here alleged, the Senate had not yet convened at the time that Sacks' term expired, and that by virtue thereof, a vacancy existed which, under the Constitution, the Governor could fill without such advice and consent.

Before it can be determined whether or not a vacancy existed which could be properly filled by the Governor without the advice and consent of the Senate, certain factual matters must be determined, but we conclude that at this stage of the proceedings, the complaint is sufficient. In our opinion, it adequately alleges the facts that Sacks' term expired; that Rubel was then duly appointed to the office; and that Sacks refused to leave.

Defendant is certainly put on notice of what he will be called upon to meet at the trial, and the issues are well defined.

The preliminary objections are now, October 18, 1965, severally overruled, and defendant is granted leave to plead over within 20 days.