Pennsylvania State Chamber of Commerce, Appellant, *v.* Torquato, Appellant.

Argued June 25, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

reargument refused October 19, 1956.

*Charles E. Kenworthey,* with him *Charles Denby, J. Tomlinson Fort, James H. Hardie, Nicholas Unkovic, John G. Wayman* and *Reed, Smith, Shaw & McClay,* for plaintiffs.

*Leon Ehrlich,* Deputy Attorney General, with him *Herbert B. Cohen,* Attorney General, *Morley W. Baker,* Special Deputy Attorney General, and *Richard H. Wagner,* Associate Counsel, for Secretary of Department of Labor and Industry et al., defendants.

*M. H. Goldstein,* with him *Goldstein & Barkan,* for intervening defendant.

*Sidney G. Handler,* with him *Arthur J. Goldberg, Elliot Bredhoff, Morris P. Glushien, Wilbur Daniels,* and *Douglass, Handler & Rosenberg,* for intervening defendants.

*David Cohen,* for intervening defendants.

*Benjamin C. Sigal,* with him *M. H. Goldstein* and *Bert Diamond,* for intervening defendants.

OPINION BY MR. JUSTICE BELL, October 1, 1956:

Plaintiffs filed a complaint in equity seeking an injunction to restrain defendants from paying any money out of the Unemployment Compensation Fund until a decision on the claims of employes of Westinghouse Electric Corporation for unemployment compensation is made by the Superior Court; and also praying for further equitable relief. The lower Court issued a special injunction prohibiting payments out of the Fund until a decision on the merits could be made by the Superior Court, but refusing all the other equitable relief sought by the employer-complainants. From this special injunctive decree each side has appealed to this Court.

While the arguments covered a wide range, the basic issues involved are narrow: Has Equity jurisdiction, and if so, did the facts and the applicable principles of law warrant and justify the special injunctive decree made by the lower Court, or should the decree be reversed as the employes contend, or greatly broadened as the employers contend?

We adopt the following excerpts from the able comprehensive opinion of Judge NEELY speaking for the lower Court:

"This action in equity was instituted on the complaint of Westinghouse Electric Corporation and seventy-one other plaintiffs as employers and taxpayers subject to the Unemployment Compensation Law (Act of December 5, 1936, P. L. 2897, as amended, 43 P.S. 751, et seq.) and contributors to the Unemployment Compensation Fund. The defendants are the Secretary of the Department of Labor and Industry, the Executive Director of the Bureau of Employment Security within that Department, and members of the Unemployment Compensation Board of Review. In addition to these officials who are charged with the duty of administering the Unemployment Compensation Law, there is also joined as a defendant the State Treasurer who is custodian of the Unemployment Compensation Fund. Many employers intervened as parties plaintiff by agreement of all parties. Also, a number of employees intervened as defendants, as did also labor organizations and persons affiliated therewith.

"The complaint was filed on March 29, 1956, and on or about that date the plaintiffs advised the Court that, as shown by their bill, they seek injunctive relief preliminary until hearing of the bill on its merits, and seek also other forms of temporary equitable relief. Upon examining the averments of the bill, the

Court, counsel for plaintiffs and defendants being present, determined that a hearing on the application for preliminary injunction was required and set the date accordingly. The matter came on for hearing before the Court en banc on April 12, 1956 . . . . The plaintiffs were represented by their counsel. The defendants were represented by the Attorney General through his Deputies. There were numerous intervening plaintiffs and defendants who were also represented at the hearing by counsel. At this hearing testimony was taken and the matter is now before us on the question as to what extent, if any, the plaintiffs are entitled to special equitable relief at this stage of the proceeding.

"The nature of this proceeding can best be understood by considering the averments of the complaint. It is averred in substance that work stoppage occurred at the plants of the Westinghouse Electric Corporation in this Commonwealth due to a labor dispute; that after the stoppage had continued for a number of weeks a telegram was dispatched by the Governor to the Unions representing the employees as bargaining agents in the dispute, and to Westinghouse, wherein the Governor stated that a nationwide strike was in progress and proposed that the Unions and the Company 'submit their dispute to final and binding arbitration,' and that while the arbitration was in progress the employees should return to work. This telegram, according to the bill, was dispatched on December 19, 1955, and on the same day the Company notified the Governor of its refusal to accept the proposal. It appears in plaintiffs' pleadings that at least one of the two Unions acting in behalf of the employees did accept the proposal. The Department of Labor and Industry, then, according to the averments of the bill, acting through its Secretary and Executive Director

of the Bureau of Employment Security, *issued a ruling dated February 17, 1956 to the effect that the work stoppage which had been a strike became a lockout on December 19, 1955, due to the acceptance of the Governor's proposal by the employees and the rejection thereof by the Company.**

"There is attached to the complaint a copy of the Department's so-called 'Lockout Ruling,' wherein it is set forth that under the provisions of the Unemployment Compensation Law, §402 (d), 43 P.S. 802 (d), *employees on strike are disqualified from unemployment compensation; but that this disqualification does not apply where there is a lockout.* It is alleged in the complaint that this so-called 'Lockout Ruling' of February 17, 1956 is invalid, and that claims for unemployment compensation in great numbers are now being illegally and unlawfully processed in the Department. It is specifically averred that determinations in a number of claims have been made by the Department, and there is attached to the complaint a copy of one such determination. It is averred that identical determinations have been made by the Department in 27 claims.

"It is averred that Westinghouse filed appeals with the Unemployment Compensation Board of Review from allowance of compensation in these 27 claims, but that if the decisions are affirmed by a Referee, and the Board on appeal affirms the Referee or fails to act within a period of thirty days of the action of the Referee, unemployment compensation will be immediately payable under the provisions of §501 (e) of the Act, 43 P.S. 821 (e), notwithstanding any further appeal to the Superior Court. The complaint alleges that the Governor's proposal, followed by the Department's

---

* Italics throughout, ours.

ruling, was coercive, in that it was sought to coerce a Pennsylvania employer to submit to compulsory arbitration in a labor dispute; that the Department's ruling, if not set aside, will result in an arbitrary and unlawful payment from the Fund in an aggregate amount of $9,500,000, and the unlawful depletion of the Fund thereby.

"The plaintiff's prayer for relief is (1) that we mandatorily direct the defendants, John R. Torquato, Secretary of the Department of Labor and Industry, and A. Allen Sulcowe, Executive Director of the Bureau of Employment Security, to rescind and reverse the Department's ruling concerning the lockout; (2) that we enjoin these two defendants, their successors, agents and representatives from accepting, processing and approving any claim for unemployment compensation based upon that ruling; (3) that we enjoin the defendants, William J. Burchinal and Frank McLaughlin, members of the Board, their successors, agents and employees from processing, hearing or approving any claim for unemployment compensation; (4) that we enjoin the defendant, Weldon B. Heyburn, State Treasurer, from making or permitting the payment of any claim for unemployment compensation based upon the Department's ruling; (5) that we declare the Governor's proposal and the Department's ruling to be unconstitutional and void; (6) that we declare §501 (e) of the Unemployment Compensation Law to be unconstitutional and void, to the extent that it requires the payment of unemployment compensation to be made to employees of Westinghouse before a decision of the Board and of the Superior Court; (7) that we grant such further equitable relief as may be required.

"To the complaint *preliminary objections* have been filed in the nature of (a) petition raising questions of

jurisdiction, (b) demurrer, and (c) motion to strike off. Since the plaintiffs seek special equitable relief, we will discuss briefly the essential facts adduced at the hearing on April 12. Many of the facts are not in dispute.

"At this hearing a number of allegations in the complaint were read into the record as facts upon which this Court could determine the plaintiffs' right to special relief. We have discussed some of the allegations in the complaint, and to the extent that the references hereinabove made are to factual matters we adopt them as facts in the case.

"Admittedly, there was a work stoppage at the plants of Westinghouse. The Governor sent the telegram referred to in the complaint and the Department issued its ruling of February 17, 1956. In that ruling the Department pointed out that employees as a matter of law are disqualified from unemployment compensation where they are on strike, but that this disqualification does not apply where there is a lockout. The Department then made its ruling in the following terms: 'RULING' 'Commencing as of December 27, 1955, the unemployment resulting from this dispute was not subject to disqualification under the provisions of Section 402 (d) of the Unemployment Compensation Law.'

"*The effect of this ruling was to hold that as of December 27, 1955 what had theretofore been a strike became a lockout because of the company's rejection of the terms specified by the Governor in his telegram of December 19, 1955.*"

It is contended by plaintiffs that the rejection by Westinghouse of the Governor's telegram urging all parties to submit their dispute to final and binding arbitration cannot transform a strike into a lockout,

nor constitute a legal basis for a ruling by the Department of Labor that a strike became a lockout because of the Company's refusal to agree to "final and binding arbitration" as urged by the Governor—citing *Morris Unemployment Compensation Case*, 169 Pa. Superior Ct. 564, 83 A. 2d 394; *Arbechesky Unemployment Compensation Case*, 174 Pa. Superior Ct. 217, 100 A. 2d 396; *Glen Alden Coal Co. v. Unemployment Compensation Board of Review*, 168 Pa. Superior Ct. 534, 79 A. 2d 796. This important issue is for the determination of the Superior Court if and when an appeal is taken to that Court.

The lower Court further said in its opinion:

"It has been developed that approximately 23,000 claims have been filed, and that the appeals from the Department's determinations in 27 of these claims have been referred to a Referee for decision, and it was represented to the Court that the Referee would proceed with his deliberations in the matter beginning April 16. It was conceded by all parties that the claims filed in behalf of each of these 23,000 persons must be treated as separate claims for each week, and that for a period of twelve weeks it would be necessary for the Department to process these many thousands of claims.

"At the conclusion of the hearing, argument was had and the plaintiffs contended that under the Unemployment Compensation Law any allowance of compensation would be payable, notwithstanding an appeal to the Superior Court to determine the eligibility of employees to unemployment benefits. The plaintiffs argued that this Court should recognize that the 'Lockout Ruling' was unlawful, and that any administrative action predicated upon such ruling should be restrained, and that in effect we should restrain any

administrative deliberations or activity in connection with the many claims that have been filed.

"The defendants, on the other hand, argued that this Court has no jurisdiction to pass judgment upon the question of benefit eligibility. They contended that the request here for equitable relief was premature, in that the plaintiffs had not yet been harmed by any ruling either by the Referee or the Unemployment Compensation Board of Review."

The Westinghouse Electric Corporation is a proper party plaintiff, not only as a contributor to the Unemployment Compensation Fund and therefore a taxpayer: *Pittsburgh Petition,* 376 Pa. 447, 450, 103 A. 2d 721; *Department of Labor & Industry v. New Enterprise Rural Electric Cooperative, Inc.,* 352 Pa. 413, 415-416, 43 A. 2d 90; *York School District Appeal,* 367 Pa. 279, 281-283, 80 A. 2d 803; *Carmichael v. Southern Coal & Coke Co.,* 301 U. S. 495, 508; *Steward Machine Co. v. Davis, Collector of Internal Revenue,* 301 U. S. 548, 583; *Fidelity-Philadelphia Trust Co. v. Hines, Secretary of Labor & Industry,* 337 Pa. 48, 51, 10 A. 2d 553, 555; *Department of Labor & Industry v. New Enterprise Rural Electric Cooperative, Inc.,* 352 Pa. 413, 415, 416, 43 A. 2d 90, 91, 92; *Commonwealth v. Sun Ray Drug Co.,* 360 Pa. 230, 233, 234, 61 A. 2d 350, 351, 352; but also because its own reserve account will be charged with the payment of any unemployment benefits that are made and its present contribution rate thereby jeopardized. See §301 (c) of the Act, as last amended in 1955, Act No. 5, and §302 of the Act, 43 P.S. 782. Cf. *Bearing Service Company v. Unemployment Compensation Board of Review,* 168 Pa. Superior Ct. 161, 77 A. 2d 713; *Commonwealth v. Sun Ray Drug Company,* 360 Pa. 230, 61 A. 2d 350; *Boyertown Burial Casket Co. v. Commonwealth,* 366 Pa. 574, 79 A. 2d 449.

Not only Westinghouse, but also all the other plaintiffs who contribute to the Unemployment Compensation Fund, have a property right therein which is entitled to protection, and for this reason and because they are taxpayers, have a status to maintain this suit. *Susquehanna Collieries Co. v. Unemployment Compensation Board of Review,* 137 Pa. Superior Ct. 110, affirmed in 338 Pa. 1, 11 A. 2d 880; *Page v. King,* 285 Pa. 153, 156, 131 A. 707, and cases above cited. See also: *Peoples Bridge Company v. Secretary of Highways,* 355 Pa. 599, 50 A. 2d 499; *Harris v. Philadelphia,* 299 Pa. 473, 149 A. 722; *Chrysler Corporation v. Smith,* 297 Mich. 438, 298 N.W. 87; *Carnegie-Illinois Steel Corporation v. Board of Review,* 117 Indiana App. 379, 72 N.E. 2d 662. Furthermore, it is certainly clear that irreparable damage would undoubtedly result if this special injunction were not granted.

We quote once again from the opinion of the lower Court:

". . . we will first give consideration to the request for equitable relief contained in paragraph (f) of the prayer in the complaint, which reads as follows: 'That the Court declare Section 501 (e) of the Act to be unconstitutional and void to the extent that it requires the payment of unemployment compensation to be made to employees of Westinghouse before a decision of the Board and of the Superior Court.'

"Claims for unemployment compensation growing out of the Westinghouse work stoppage have been filed by approximately 23,000 employees. As to 27 of these claims, the Department of Labor and Industry sent out a notice of determination in each case as follows: 'Claims for weeks ending October 23, 1955 consecutively through December 26, 1955 are disapproved. The

stoppage during the period October 17, 1955 to December 26, 1955, is determined to be a labor dispute other than a lockout and claimants are ineligible. 'Claims for weeks ending January 2, 1956 consecutively through February 20, 1956, are approved. The stoppage commencing as of December 27, 1955 is determined to be a lockout and claimants are eligible. 'See also "Special Notice of Scope of Mass Claim Case" Attached.' "Appeals from the determination in each of these 27 cases were taken by Westinghouse to the Unemployment Compensation Board of Review and referred by that Board to the Referee for decision.

"Under the provisions of §501 of the Act, 43 P.S. 821, when an application for unemployment compensation is filed, the Department must give notice to both the claimant and the employer concerning claimant's eligibility, and if eligible the weekly rate and maximum amount of compensation payable. The Department then is required to determine whether the claim is valid. And if the employer has filed with the Department within the required time pertinent information in writing raising any question concerning the eligibility of the claimant for compensation, appropriate notice in writing of its determination must then be given to the employer. It is provided in this section that as to any determination, unless either the claimant or the employer files an appeal with the Unemployment Compensation Board of Review within ten calendar days after the delivery of such notice, the determination of the Department shall be final and compensation paid or denied in accordance with that determination.

"Procedural due process is accorded to both the employer and the claimant in the above mentioned administrative procedures set forth in §501 of the Act.

And, of course, it is recognized that due process of law in procedural matters is required in proceedings before administrative tribunals as well as before judicial bodies: Armour Transportation Company v. Pennsylvania Public Utility Commission, 138 Pa. Super. Ct. 243, 247 (1939); National Automobile Corporation v. Barfod, 289 Pa. 307, 311, 312 (1927).*

"Section *501 (e)* of the Act, however, provides an administrative procedure that gives rise to the dispute in this case and is the basis for the prayer for special equitable relief at this time, as set forth in paragraph (f) of the prayer in the complaint. This section contains the following provision: '. . . Provided, That when the board affirms a decision of a referee or of the department allowing compensation, such compensation shall be paid notwithstanding any further appeal: And provided further, That when a referee affirms a decision of the department allowing compensation, in the event of a further appeal to the board, such compensation shall be paid after a period of thirty days from the date of such further appeal if the board has not rendered a decision prior thereto.' This proviso is clearly to the effect that compensation is immediately payable upon the affirmance of the Board; and is further payable within thirty days after the Referee affirms the decision of the Department awarding compensation if the Board does not take action within thirty days. This is the so-called 'double affirmation

---

* To these authorities we add: *Anderson National Bank v. Luckett*, 321 U. S. 233; *Dohany v. Rogers*, 281 U. S. 362; *Ballard v. Hunter*, 204 U. S. 241; *Union Trust Company of Pittsburgh Case*, 359 Pa. 363, 59 A. 2d 154; *Commonwealth ex rel. Chidsey v. Keystone Mutual Casualty Co.*, 373 Pa. 105, 119, 95 A. 2d 664; *Narehood v. Pearson*, 374 Pa. 299, 304, 96 A. 2d 895; *Commonwealth ex rel. Chidsey v. Mallen*, 360 Pa. 606, 614, 63 A. 2d 49; *Shields v. Utah Idaho Central Railroad Co.*, 305 U. S. 177.

clause.' This 'double affirmation clause' *requires that payments be made forthwith without regard to judicial review* (§511, infra) when there are two findings in favor of claimants.

"Section 510 of the Act, 43 P.S. 830, provides that an aggrieved party, after exercising his remedies before the Board, may appeal to the Superior Court, *but that appeal* under the provisions of §511, 43 P.S. 831, *shall not act as a supersedeas.* Therefore, §501 (e) of the Act provides that compensation shall be payable, notwithstanding an appeal to the Superior Court from the determination of the Board.

"There are two other sections of the Act that should be considered. Section 502, 43 P.S. 822, states that after hearings are concluded before the Referee, his decision 'shall be deemed the final decision of the Board, unless within ten days after the date of such decision the board acts on its own motion, or upon application, permits any of the parties or the department to institute a further appeal before the board.' And §504 of the Act, 43 P.S. 824, provides: 'The board shall have power, on its own motion, . . . to remove, transfer, or review any claim . . . decided by, a referee, and in such case . . . may affirm, . . . the determination . . ., of the department or referee on the basis of the evidence previously submitted in the case. . . . .' The cumulative effect of these various statutory provisions is that compensation shall be payable on the basis of the administrative determination of these officials, regardless of any appeal pending in the Superior Court.

"The Superior Court, of course, is given the statutory jurisdiction on appeal to determine questions concerning unemployment benefit eligibility and has exercised that jurisdiction in a long line of cases. It would serve no useful purpose to do more than state that the

320

books are full of Superior Court decisions deciding these questions. For example: Hall Unemployment Compensation Case, 171 Pa. Super. Ct. 127 (1952); Sopko Unemployment Compensation Case, 168 Pa. Super. Ct. 625 (1951); Silver Unemployment Compensation Case, 167 Pa. Super. Ct. 345 (1950); Tronieri Unemployment Compensation Case, 164 Pa. Super. Ct. 435 (1949); Boyertown Burial Casket Company v. Unemployment Compensation Board of Review, supra. Cf. Commonwealth of Pennsylvania v. Phoenix Iron Company, 62 Dauphin 77 (1951). And in determining the question of eligibility for unemployment compensation, that Court has had occasion to determine whether a work stoppage constituted a lockout or strike: Burger Unemployment Compensation Case, 168 Pa. Super. Ct. 89 (1951); Hogan Unemployment Compensation Case, 169 Pa. Super. Ct. 554 (1951); P. McGraw Wool Co. v. Unemployment Compensation Board of Review, 176 Pa. Super. Ct. 9 (1954). [Morris Unemployment Compensation Case, 169 Pa. Superior Ct. 564].

"Our problem here in determining whether or not special equitable relief can now be awarded, in accordance with paragraph (f) of the prayer, is to determine whether the provision in §501 (e) of the Act, requiring the payment of compensation pending an appeal to the Superior Court, is valid. It is, of course, apparent that where the Board orders the payment of unemployment benefits, the Fund must be depleted to the extent of the payments pending the determination of the legal questions in the Superior Court, as would also the credit balance in an employer's reserve account. These payments having been made, the question as to whether or not the claimants-employees—are eligible to these benefits actually would be moot as to

the payments already made when the case reaches the Superior Court. It is alleged that such is the case here, that payments to the extent of $9,500,000 could be withdrawn from the fund without any judicial determination as to the propriety of such withdrawal. . . .

"We do not believe that it is consistent with due process of law to require the payment of claims during the very period of time when the eligibility of the claimants for unemployment compensation is being litigated. To do so, in effect, is to permit the administrative officials for all practical purposes to make a final determination without any adequate means for effective judicial review. We believe that substantial requirements of due process dictate that the status quo as to these payments be preserved until the Court which has statutory jurisdiction to determine the validity of these claims passes upon the legal questions involved."

We agree with the lower Court that the statutory provisions requiring payment of unemployment compensation prior to judicial review and prohibiting an appeal to the (Superior) Court from acting as a supersedeas, violate the due process clause of the Constitution of the United States: *Porter, Auditor v. Investors Syndicate,* 286 U. S. 461, 471; *Aircraft & Diesel Equipment Corp. v. Hirsch et al.,* 331 U. S. 752, 773; *Pacific Telephone & Telegraph Co. v. Kuykendall,* 265 U. S. 196, 201, 205; *Oklahoma Natural Gas Co. v. Corporation Commission,* 261 U. S. 290; *Chicago, Milwaukee and St. Paul Railway Co. v. Minnesota,* 134 U. S. 418, 456, 457; *Chrysler Corp. v. Appeal Board of Michigan Unemployment Compensation Commission,* 3 N.W. 2d 302 (1942); *State ex rel. Campbell v. State et al.,* 57 N.E. 2d 433 (Supreme Court of Indiana, 1944); *Dallas Fuel Co. v. Horne et al.* 300 N.W. 303 (Supreme Court of Iowa, 1941).

In *Porter, Auditor v. Investors Syndicate,* 286 U. S., supra, the Court said (pages 470, 471) : "Where as ancillary to the review and correction of administrative action, the state statute provides that the complaining party may have a stay until final decision, there is no deprivation of due process, although the statute in words attributes final and binding character to the initial decision of a board or commissioner. Pacific Live Stock Co. v. Lewis, 241 U. S. 440, 454. *But where either the plain provisions of the statute** (Pacific Tel. Co. v. Kuykendall, 265 U. S. 196, 203, 204) or the decisions of the state courts interpreting the act (Oklahoma Nat. Gas Co. v. Russell, 261 U. S. 290) preclude a supersedeas or stay until the legislative process is completed by the final action of the reviewing court, due process is not afforded,* and in cases where the other requisites of federal jurisdiction exist recourse to a federal court of equity is justified."

In *Aircraft & Diesel Equipment Corp. v. Hirsch et al.,* 331 U. S., supra, the Court said (p. 773) : "It is true that the presence of constitutional questions, coupled with a sufficient showing of inadequacy of prescribed administrative relief and of threatened or impending irreparable injury flowing from delay incident to following the prescribed procedure, has been held sufficient to dispense with exhausting the administrative process before instituting judicial intervention.[38]"

---

* Italics throughout, ours.

"[38] Thus, the Court has permitted resort to a federal court of equity, where a state was enforcing confiscatory rates and by its law precluded a stay or supersedeas until the state courts 'acting in a legislative capacity' had taken final action. Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290; Pacific Tel. & Tel. Co. v. Kuykendall, 265 U. S. 196; Porter v. Investors Syndicate, 286 U. S. 461. For other decisions holding that a federal court may exercise

In *Chicago, Milwaukee and St. Paul Railway Co. v. Minnesota,* 134 U. S., supra, the Court said (pp. 456-457) : ". . . In other words, although the railroad company is forbidden to establish rates that are not equal and reasonable, there is no power in the courts to stay the hands of the commission, if it chooses to establish rates that are unequal and unreasonable.

"This being the construction of the statute by which we are bound in considering the present case, we are of opinion that, so construed, *it conflicts with the Constitution of the United States* in the particulars complained of by the railroad company. *It deprives the company of its right to a judicial investigation, by due process of law,* under the forms and with the machinery provided by the wisdom of successive ages for the investigation judicially of the truth of a matter in controversy, and substitutes therefor, as an absolute finality, the action of a railroad commission which, in view of the powers conceded to it by the state court, cannot be regarded as clothed with judicial functions or possessing the machinery of a court of justice."

In *Pacific Telephone & Telegraph Co. v. Kuykendall,* 265 U. S., supra, the Court said (p. 201): " 'If the commission shall at the conclusion of the hearing refuse to permit such increase, either in whole or in part, no supersedeas shall be granted in any action or proceeding brought to review the order of the commission pending the final determination of such action by the superior court, or, if appealed to the supreme court, by such supreme court.'

". . . The state statute forbidding a stay of proceedings until a final judicial decree was rendered, of

its equitable jurisdiction where there is an inadequate state remedy to correct a constitutional wrong, see Hillsborough v. Cromwell, 326 U. S. 620; Wallace v. Hines, 253 U. S. 66."

course, could not prevent a federal court of equity from affording such temporary relief by injunction as the principles of equity procedure required. The conditions set out in the bill, therefore, seem to have made a case ripe for federal relief. Bacon v. Rutland R. R. Co., 232 U. S. 134; Prendergast v. New York Tel. Co., 262 U. S. 43, 48."

In *Chrysler Corp. v. Smith*, 298 N.W., supra, the Court said (p. 92): "Claimants invoked that part of §34 of the act, reading: 'Provided, That if the final decision of a referee affirms the initial or an amended determination, or the appeal board affirms the final decision of a referee, allowing benefits, such benefits, shall be paid regardless of any appeal which may thereafter be taken, but if such decision is finally reversed, no employer's experience record shall be charged with benefits so paid.'

"This, if held applicable in the instance at bar, would render administrative action superior to recognized judicial power in the premises and constitute the provisions relative to appeal and court procedure a nullity. If construed, as applicable in this instance, it would render due process of law, expressly recognized and provided for in the [administrative provisions of the] act, nugatory and a senseless gesture."

\* In *Chrysler Corporation v. Board*, 3 N. W. (2d), supra, the Court said (p. 304): "Regardless of what useful and lawful purpose the double affirmation clause of section 34 of the Unemployment Compensa-

---

\* A contrary conclusion has apparently been reached in three jurisdictions, although it may be possible to distinguish those cases because of statutory or procedural and other differences: *Abelleira et al. v. District Court of Appeal*, 109 Pacific (2d) 942 (Cal. 1941); *Todd Shipyards Corporation et al. v. Texas Employment Commission et al.*, 245 S.W. (2d) 371 (Texas, 1951); *State ex rel. Aikens v. Davis*, 45 S.E. (2d) 486 (W. Va., 1947).

tion Act might serve under other circumstances, as claimants wish to have it applied in the instant case it is unconstitutional in that if so applied it would deprive plaintiff of due process of law. . . .

". . . 'Unless there is a tribunal of a judicial character, there cannot be due process of law under the Fourteenth Amendment to the federal Constitution, nor within the meaning of state constitutions when justly construed. . . .' . . . .''

Our decisions hold that property rights which are jeopardized or denied by an administrative agency may be protected by a Court of equity. In *Harris v. State Board of Optometrical Examiners*, 287 Pa. 531, 135 A. 237, this Court, in considering a petition for a writ of mandamus to compel the State Board of Optometrical Examiners to issue a license, said (p. 534): ". . . The right of an optometrist, duly licensed, to conduct his business or practice optometry is a property right protected by the Constitution: Dent v. West Va., 129 U. S. 114, 123, 124; Douglass v. Noble, 261 U. S. 165. *Where property rights, so secured, are unlawfully invaded by the legislature, directly or by one of its agents, the aggrieved person may appeal to the courts for redress.* This right had its inception in the Magna Charta.''

In *Bell Telephone Company of Pennsylvania v. Driscoll et al.*, 343 Pa. 109, 21 A. 2d 912, the Court said (p. 112): ''We have no doubt about the right of the Court of Common Pleas of Dauphin County in the exercise of its equitable powers to entertain a bill to enjoin an administrative agency of the Commonwealth from exercising powers not conferred on it or unconstitutionally conferred on it. That point has been decided too frequently to be longer in doubt: Martin v. Baldy, 249 Pa. 253, 259, 94 A. 1091; Germantown Tr.

Co. v. Powell, 260 Pa. 181, 183, 103 A. 596; York Rys. Co. v. Driscoll, 331 Pa. 193, 196, 200 A. 864; W. Pa. Hospital v. Lichliter, 340 Pa. 382, 392, 17 A. 2d 206."

In *Soble et al. v. State Board of Pharmacy,* 49 Dauphin 145 (1940), that Court, in construing the Act of May 26, 1921, which gave the State Board of Pharmacy licensing powers but contained, as did the Banking Acts, no provision for an appeal, said (p. 150) : "No appeal is given by this statute. Where property rights are involved, some method of review of the action of administrative officers or boards by a judicial tribunal must be afforded, otherwise there is no due process of law."*

It is clear from the foregoing cases, particularly the above quoted and cited cases of the Supreme Court of the United States, that a statutory provision which directs that unemployment compensation in large amounts shall be made to claimants before the validity of their claims to such payments are or may be determined by a Court—in this case the Superior Court of Pennsylvania—is a violation of the due process of law requirements of §1 of the Fourteenth Amendment of the Constitution of the United States and also of §9

---

* In *Delaware County National Bank v. Campbell,* 378 Pa. 311, 106 A. 2d 416, this Court allowed an appeal in the nature of a broad certiorari from an Order of the Pennsylvania Banking Board approving a merger of a state bank with a national bank, and said (page 321), in a footnote: "Administrative agencies have mushroomed in the last 20 years in number, growth and power, to such an extent that today they exercise considerable control not only over our property but also over our daily lives. In the light of these facts it is certainly desirable to have some judicial review over some of their judicial actions which so vitally affect the property and the basic rights of the people of Pennsylvania. Denial of any judicial review in such cases would at times result in a miscarriage of justice and in some cases a deprivation of due process."

of Article 1 of the Constitution of Pennsylvania. *Willcox v. Penn Mutual Life Insurance Company*, 357 Pa. 581, 590-591, 55 A. 2d 521; *Palairet's Appeal*, 67 Pa. 479; *Crawford Estate*, 362 Pa. 458, 67 A. 2d 124.

The remaining question is whether Equity has jurisdiction and whether the relief granted by the lower Court sitting in Equity was proper and just.

This case does not involve the question or issue of whether the employes of Westinghouse are or are not entitled to unemployment compensation, nor the amount or merit of their claims. All of these are matters first for the Referee and the Unemployment Compensation Board of Review and thereafter for the Superior Court of Pennsylvania. The sole issue in this case at this time is, we repeat, whether, *under all the facts admitted by the pleadings, and under the applicable principles of law,* a Court of Equity has jurisdiction and can properly and justly enjoin the payment of unemployment compensation prior to a decision (on the merits of these claims) by the Superior Court of Pennsylvania.

All of the (approximately) 276,000 claims for unemployment compensation will, if approved, total (according to the bill of complaint, which defendants demurred to) over $9,000,000. All of these claims, or a substantial number of them, could be paid under §501 (e) of the Act and would likely be paid before a decision on the merits has been or could be made by the Superior Court. There may be no justiciable question before that Court if compensation has been paid prior to that Court's hearing and decision on the merits, and it is conceded that if unemployment compensation payments are made to the claimants they will never be recovered. Under such circumstances defendants' threatened actions are likely to produce irrepa-

rable harm unless a supersedeas or injunction is granted, and a supersedeas is prohibited by §511; see also §501 (e). While the ultimate decision of the Superior Court *on the merits* will settle the question as to whether the work stoppage was a strike or constituted a lockout, the equitable relief granted by the Court below is the only effective method by which the constitutional rights of the plaintiffs can in the meantime be adequately protected.

Defendants contend that Equity has no jurisdiction for the two-fold reason (a) that the jurisdiction of a Court of Equity may not be invoked where there is an *adequate* remedy at law, and (b) it is an established general principle of law that where a remedy is provided by statute or otherwise it must be resorted to and pursued: *Collegeville v. Philadelphia Suburban Water Company,* 377 Pa. 636, 105 A. 2d 722; *Barth v. Gorson,* 383 Pa. 611, 119 A. 2d 309. These are undoubtedly well recognized principles. However, defendants overlook the fact that it is equally well established that *a Court of Equity has jurisdiction and in furtherance of justice will afford relief if the statutory or legal remedy is not adequate, or if equitable relief is necessary to prevent irreparable harm*: *Duquesne Light Company v. Upper St. Clair Township,* 377 Pa. 323, 105 A. 2d 287; *Wood et al. v. Goldvarg,* 365 Pa. 92, 74 A. 2d 100; *Collegeville v. Philadelphia Suburban Water Company,* 377 Pa., supra; *Gray v. Citizens' Gas Company,* 206 Pa. 303, 55 A. 1135; *Pennsylvania Railroad Company v. Bogert,* 209 Pa. 589, 59 A. 100; *Everett v. Harron,* 380 Pa. 123, 110 A. 2d 383; *Pennsylvania Company v. Franklin Fire Insurance Company,* 181 Pa. 40, 37 A. 191; Story's Equity Juris., §33; *Adams v. New Kensington,* 357 Pa. 557, 560, 55 A. 2d 392.

In *Collegeville v. Philadelphia Suburban Water Co.*, 377 Pa., supra, the Court said: "It has long been established that the jurisdiction of a court in equity may not be invoked where there is an adequate remedy at law, . . . . When a statute provides a remedy by which a right may be enforced, no other remedy than that afforded by the statute can be used. . . .

"*However, equity will afford relief if the statutory remedy is not adequate or its pursuit would work irreparable harm*: Duquesne Light Company v. Upper St. Clair Township, 377 Pa. 323, 105 A. 2d 287; Wood et al. v. Goldvarg, 365 Pa. 92, 74 A. 2d 100."

In *Pennsylvania R. R. Co. v. Bogert*, 209 Pa., supra, the Court said (p. 601) : "The most comprehensive statement of the rule and the one which has been followed by this court ever since its announcement in 1850 by Judge KING in Bank of Virginia v. Adams, 1 Parsons, 534, is as follows: 'To induce equity to refuse its aid to a suitor, it is not sufficient that he may have some remedy at law. *An existing remedy at law* to induce equity to decline the exercise of its jurisdiction in favor of a suitor *must be an adequate and complete one.* And when from the nature and complications of a given case, its justice can best be reached, by means of the flexible machinery of a court of equity, in short where a full, perfect and complete remedy cannot be afforded at law, equity extends its jurisdiction in furtherance of justice.' " See also *Bell Telephone Company v. Driscoll*, 343 Pa. 109, 21 A. 2d 912, supra.

Equity likewise has jurisdiction to protect by injunction or appropriate remedy (a) property rights, and (b) personal rights "where a multiplicity of suits may be prevented or where a fundamental question of legal right is involved", and where the interests of justice require equitable relief: *Everett v. Harron*, 380

Pa., supra; *Oil City National Bank v. McCalmont,*
303 Pa. 306, 311, 154 A. 497; *Bell Telephone Co. v.
Driscoll,* 343 Pa. 109, 21 A. 2d 912; *Poinsard v. Poinsard,* 117 Pa. Superior Ct. 313, 178 A. 308; *Lehigh Valley R. R. v. Graham,* 64 Pa. Superior Ct. 437, 450, 451.

It is clear from all of the authorities hereinabove
cited or quoted that there is no merit in defendants'
contention that Equity is without jurisdiction.

The Unemployment Compensation Act has created
an administrative agency to dispose of claims for unemployment compensation. The disposition of at least
27 of such claims is, as we have seen, now being considered by that agency, one of the defendants herein.
While plaintiffs' contention, viz., that the administrative processing of these and 276,000 other claims for
unemployment compensation (by employes of Westinghouse) should be restrained, is plausible, we do not
believe that the refusal by the lower Court to restrain
this processing constituted an abuse of discretion. On
the other hand, defendants strenuously oppose any injunction, point out, inter alia, the hardships and distress they will suffer by prolonged litigation, if their
claims are decided to be just. Although it is indisputable that the law's delays almost always cause successful litigants severe economic hardship, the answer
is not to short circuit or violate the Constitution, but
to expedite (by speed-up or elimination or otherwise)
administrative procedure and the time for appeals.
This can be further expedited by a test case.

The special injunctive decree issued by the lower
Court maintains the status quo and protects and preserves the rights of all the parties, plaintiffs and defendants alike, until each claim for unemployment compensation is decided by the Superior Court on its merits and in accordance with the applicable principles

of law. That decree, we repeat, protects the Fund but does not bar any employe from presenting a valid claim for unemployment compensation and having such claim decided specifically or by appropriate ruling by the Superior Court. This was fair and proper, clear and just.

Decree affirmed; each party to pay its, his and their respective costs.